UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GARY LEROY MILLER | CIVIL ACTION NO. 07-0122-A |
| -vs- | JUDGE DRELL |
| BETTY JEAN GIBSON BROADWAY, et al. | MAGISTRATE JUDGE KIRK |

## OPINION

Before the Court is the appeal of debtor Gary Leroy Miller ("Miller") from the bankruptcy court's complicated denial of the First Amended Disclosure Statement in Support of the First Amended Plan of Reorganization by Gary Leroy Miller ("Disclosure Statement"). Based on the Louisiana Third Circuit Court of Appeal's recent opinion in Miller's state court action against ConAgra, Inc., we remand to the bankruptcy court for a new determination of the feasibility of Miller's proposed plan of reorganization.

## BACKGROUND

This bankruptcy matter originally arose over ten years ago, and Miller obtained a "no asset" discharge on February 24, 1997. The next year, he filed suit against ConAgra, now Pilgrim's Pride ("Pilgrim's Pride"), in the Louisiana 10th Judicial District Court. As the state suit progressed, the Chapter 7 bankruptcy trustee ("Trustee") eventually became aware of it. As a result, in July 2005, the bankruptcy court reopened the bankruptcy case on the Trustee's motion. The proceedings now before us are part of that reopened case.

Pilgrim's Pride removed the state litigation to the bankruptcy court in September 2005, but the bankruptcy court remanded to the state court for decision.  Meanwhile, in the reopened bankruptcy case,  Miller agreed that his claims against Pilgrim's Pride are property of the estate, and the bankruptcy court entered a consent judgment to that effect on November 30, 2005.  On January 9, 2006 Miller obtained a judgment in excess of two million dollars in the state court action.  The 10th Judicial District Court expressly decided that Miller's failure to include his claim against Pilgrim's Pride in the bankruptcy schedules did not preclude him, under the doctrine of judicial estoppel, from later bringing the claim.  Shortly thereafter, the state court granted the Trustee's motion to enroll as plaintiff in that state action, which then become embroiled in the appeals process.[1]  Because of the consent judgment in the bankruptcy case, if Miller is ultimately able to recover in the state court action against Pilgrim's Pride, the recovery goes first to the estate.[2]

On May 31, 2006, the bankruptcy court granted Miller's motion to convert the bankruptcy case from Chapter 7 to Chapter 11, removing the Trustee, making Miller the debtor in possession, and triggering the default 120-day exclusive period under 11 U.S.C. § 1121, during which the debtor alone may file a plan of reorganization.  On September 18, 2006, unsecured impaired creditor Rosewood Properties, Inc. ("Rosewood") and a

---

[1]  As of the date of the bankruptcy court's decision, the most significant development was that the Louisiana Third Circuit Court of Appeal had granted one writ in part and made it peremptory, remanding to the 10th Judicial District Court because an apparent judicial oversight prevented the delay for appeals from starting.  Miller v. ConAgra, Inc., 935 So. 2d 388 (La. App. 3 Cir. 7/19/06).

[2]  There is a heated dispute as to whether Miller would be entitled to the surplus, but we do not reach that issue in this opinion.

group of unsecured impaired creditors named Gibson (collectively, "the Gibsons") filed a motion to modify in bankruptcy court, seeking to terminate the exclusive period. On September 28, 2006, Miller filed a disclosure statement in support of his plan of reorganization and then, on November 28, the Disclosure Statement at issue here. Significantly, the Miller plan depends upon the eventual execution of the state court judgment to fund the plan.

Rosewood and the Gibsons vehemently objected and object to the Miller plan on the grounds that neither, as an impaired creditor, will approve it. They argued (and continue to argue) that they are the only impaired creditors, and since neither will approve the plan, the bankruptcy court may not approve it. Moreover, they oppose the Miller plan on the grounds that the funding is contingent, since the state court judgment may not survive the appellate process. They argue, inter alia, that the Miller plan is not feasible and cannot be confirmed.

On December 20, 2006, following a hearing (the transcript of which is in the record as Doc. 1-3), the bankruptcy court granted the September 18, 2006 motion to modify, terminating the exclusive period. At the same time, the court denied Miller's Disclosure Statement. The court assigned several reasons at the hearing, among them: (1) Rosewood and the Gibsons are the only impaired creditors who have filed claims and neither will approve the Miller plan, so the plan must be denied; (2) the Louisiana 10th Judicial District Court incorrectly decided the issue of judicial estoppel in the state action, and under correctly applied bankruptcy law, Miller should not have been able to

3

proceed with the state suit; (3) Miller filed the reorganization plan in bad faith; and, most pertinent, (4) the Miller plan is not feasible.

The effect of the bankruptcy court's December 20 order terminating the exclusive period is that creditors could then file their own plans of reorganization, and Rosewood did just that. If adopted, the Rosewood plan would depend on Pilgrim's Pride's paying off the claims of Miller's creditors, including Rosewood and the Gibsons, for approximately $250,000, in exchange for Miller's relinquishing his claims against Pilgrim's Pride, represented by the state court judgment. Rosewood obviously believes that its plan avoids the problems that it objects to in the Miller plan. Under the Rosewood plan, the creditors are thus assured that their claims will be satisfied, but on the downside for Miller there would be no surplus. In trading an uncertain state court judgment potentially worth over two million dollars for a certain and relatively quicker satisfaction of all creditor claims, the Rosewood plan exemplifies the time-worn expression, "A bird in the hand is worth two in the bush."

On January 19, 2007, Miller appealed the bankruptcy court's denial of Miller's Disclosure Statement. Meanwhile, on December 5, 2007, the Louisiana Third Circuit Court of Appeal issued an opinion affirming the Louisiana 10th Judicial District Court's judgment in favor of Miller in the state court action against ConAgra.[3] The issue before us is simply whether the bankruptcy court's denial of Miller's Disclosure Statement was proper.

---

[3] We took judicial notice of the Louisiana Third Circuit's opinion on December 12, 2007. (Doc. 44).

4

## LAW AND ANALYSIS

The bankruptcy court's denial of the Disclosure Statement is based upon its determination that the Miller plan may not be confirmed.  Under 11 U.S.C. § 1129:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>                            * * *
> > (3) The plan has been proposed in good faith and not by any means forbidden by law.
>                            * * *
> > (7) With respect to each impaired class of claims or interests–
> > > (A) each holder of a claim or interest of such class–
> > > > (i) has accepted the plan; or
> > > > (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; . . .
>                            * * *
> > (8) With respect to each class of claims or interests--
> > > (A) such class has accepted the plan; or
> > > (B) such class is not impaired under the plan.
>                            * * *
> > (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.
>
> > (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
>                            * * *
> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. * * *

5

Id. Thus, unless the so-called "cramdown" provision of Section 1129(b) is properly invoked, a plan may not be confirmed if even one of the requirements listed in Section 1129(a) is not met.

At the December 20, 2006 hearing, the bankruptcy court assigned several different reasons for its decision to deny Miller's Disclosure Statement, as noted above. Among those was the court's determination that the Miller plan was not feasible. Under Fed. R. Bankr. P. 8013, we review the bankruptcy court's findings of fact, "whether based on oral or documentary evidence," under the clearly erroneous standard of review. The Fifth Circuit has explained this standard in the context of a feasibility determination as follows:

> This Court, acting as a second review court, reviews the bankruptcy court's findings of fact under the clearly erroneous standard, and the bankruptcy court's conclusions of law de novo. In re United States Abatement Corp., 79 F.3d 393, 397 (5th Cir.1996). * * *

> Section 1129(a)(11) codifies the feasibility requirement and requires that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan. 11 U.S.C. § 1129(a)(11). To allow confirmation, the bankruptcy court must make a specific finding that the plan as proposed is feasible. In re M & S Assoc., Ltd., 138 B.R. 845, 848 (Bankr.W.D.Tex.1992). The standard of proof required by the debtor to prove a Chapter 11 plan's feasibility is by a preponderance of the evidence, [Matter of Briscoe Enterprises, Ltd., II, 994 F.2d 1160, 1165 (5th Cir. 1993)], and we review the bankruptcy court's finding that a debtor's plan is feasible under the clearly erroneous standard. Id. at 1166.

> In determining whether a debtor's Chapter 11 plan of reorganization is feasible, we noted in Briscoe that "the [bankruptcy] court need not require a guarantee of success ..., only a reasonable assurance of commercial viability is required." Id. at 1165-66; see also Kane v. Johns-Manville Corp., 843 F.2d 636 (2nd Cir.1988). All the bankruptcy court must find is that the plan offer "a reasonable probability of success." In re Landing Assoc., Ltd., 157 B.R. 791, 820 (Bankr.W.D.Tex.1993).

Financial Sec. Assur. v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans Ltd. Pshp.),

116 F.3d 790, 796, 801 (5th Cir. 1997). Thus, we review the bankruptcy court's feasibility

determination under the clearly erroneous standard of review, examining the bankruptcy

court's decision under the above criteria.

 At the December 20 hearing,  the following exchange took place when Miller,

through counsel, addressed the issue of feasibility:

> [COUNSEL FOR MILLER:]  And we agree because Pilgrim's Pride has filed
> pleadings saying it will never pay a penny, and I believe in front of Your
> Honor counsel for Pilgrim's Pride said it would rather spend $30 million
> litigating than propose a settlement that would provide the debtor with a
> penny of recovery and it was recognized that that might be an irrational
> approach, but it was their approach.  Well, that's fine.  That's their
> approach.  Our approach is not an irrational approach.
>
> THE COURT:  Yes, but does that — that doesn't sound like it's enhancing
> the debtor's, the feasibility of the debtor's plan.
>
> I mean, I haven't seen Pilgrim's Pride show up the checkbook.  It is to be
> true, but if, you know, if it is a cold day in you know where —
>
> [COUNSEL FOR MILLER:]  We have —
>
> THE COURT:  — how does that make the debtor's plan feasible?
>
> [COUNSEL FOR MILLER:]  I think the debtor's plan is feasible because we
> won and because they're going to have to post, if they're entitled to a
> suspensive appeal, it's going to have to be upon the posting of a bond that
> comports with applicable state law.  And that bond, if it's posted and if it
> can be and if they can get a suspensive appeal, will provide the basis upon
> which the court can conclude that if we're right, the Court will have to hear
> testimony about the value of the claim, and we propose that we'll present
> expert testimony about the value of the claim, if the claim is to be valued
> as we think it should be, the feasibility is established by virtue of the
> posting of a bond, and good and valuable security that can be executed
> upon upon the final resolution of any appellate deadline.
>
> That, to me, means that the — if — they're going to have to show that
> they're going to win.  If they show that they're going to win, which they

won't be able to, then Your Honor's going to say, "It's not feasible. They're going to win. This judgment is a fluke." We think that's not going to happen. We think at confirmation you're going to find that not only was the [state court] judge right, but that the bond is going, if they're able to get a suspensive appeal — and we'll probably know that by the time we get to confirmation — then you'll be able to point out, "There's an appeal bond there. It looks right. It has been determined to comport with applicable state law, and it's securing the payment of the judgment which is securing the payment of the claim of Rosewood and the Gibsons." And we think that that's going to establish that our plan is feasible.

(Doc. 1-3, pp. 42-44).

> After considering the record and the argument of counsel, the bankruptcy court specifically determined that the Miller plan was _not_ feasible:

Finally, feasibility. This debtor cannot satisfy the feasibility test. There is no evidence that Rosewood and Gibson would accept the plan. The state court decision is on appeal and is mired in a procedural quagmire. Issues abound as to whether the appeal is devolutive or suspensive in nature, whether the judgment is enforceable, etcetera.

At this point it is sufficient to observe that there is no final unappealable judgment and the outcome of which is unclear that we will have one in any meaningful period of time in which the debtor can make distribution to the creditors.

(Doc. 1-3, p. 64).

> Under Section 1129, the bankruptcy court must find that _all_ of the requirements are met in order to confirm a plan, and the bankruptcy court has clearly determined that the Miller plan is not feasible. The majority of its determination rests not on the disapproval of the impaired creditors or on Miller's alleged bad faith in submitting the plan or even on the correctness of the state court's opinion, but rather on the uncertain nature of the state court judgment, particularly in light of the length of time to collection, the morass of the appeals process, and the possibility that the decision could be significantly lowered or even reversed on appeal.

8

Regardless of the previous merits of the bankruptcy court's determination, law does not take place in a vacuum, and in the meantime a highly significant development took place: on December 5, 2007, the Louisiana Third Circuit Court of Appeal issued an opinion affirming the 10th Judicial District Court's judgment in favor of Miller. Miller v. ConAgra, Inc., 07-747 (La. App. 3 Cir. 12/5/2007); ___ So. 2d ___. Absent the Louisiana Third Circuit's opinion, we would be comfortable judging the propriety of the bankruptcy court's determination, but the lay of the land has fundamentally changed, and the bankruptcy court must build a new structure atop it. Because we find that the feasibility determination is an essential part of the bankruptcy court's opinion[4] and because that determination was based in large part on the uncertainty of a judgment which is now significantly more certain, we remand to the bankruptcy court to make a new determination of feasibility in light of the Louisiana Third Circuit's opinion.

## CONCLUSION

For the foregoing reasons, we REMAND to the bankruptcy court for a determination of the feasibility of the Miller plan in light of the Louisiana Third Circuit Court of Appeal's December 5, 2007 opinion affirming the judgment of the 10th Judicial District Court.

SIGNED on this ___ day of December, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[4] Outside of the issue of feasibility, there is much in the bankruptcy court's reasoning that we find questionable. Because the case may turn on the determination of feasibility, remand is appropriate.